## Gise *versus* Commonwealth.

1. The limitation of the Act of March 31st 1860 (Criminal Procedure), sect. 77, is a bar to a prosecution for bigamy, after two years from the second marriage, although cohabitation under it continued until within two years of the prosecution.

2. A *literal* construction of sect. 49, Act of March 31st 1860 (Criminal Code), defines no offence; a man cannot legally have two wives or a woman two husbands at the same time.

3. At common law bigamy occurs and is complete when the second marriage is accomplished.

4. Bigamy is where one marries a second wife or husband, the first being living.

5. On an indictment for bigamy it is not necessary to prove cohabitation; the crime is complete although there be an immediate separation, without cohabitation at all.

March 17th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Quarter Sessions of *Luzerne county :* Of January Term 1876, No. 250.

At the September Term 1875 of the Court of Quarter Sessions of Luzerne county, an indictment was found on the 10th of September, the first count of which charged: that David Gise "did unlawfully and wilfully have two wives at one and the same time."

The second count charged that Gise, "on the first day of January, A. D. one thousand eight hundred and fifty-five, did marry one Harriet Fisher, and he the said Harriet then and there had for a wife, and the said David Gise afterwards, and while he was so married to the said Harriet as aforesaid, on the twenty-fourth of May, A. D. one thousand eight hundred and sixty-eight, unlawfully did marry and take to wife one Jemima Davis, and to her the said Jemima was then and there married ; the said Harriet, his former wife, being then alive," &c.

The Act of March 31st 1860 (Criminal Code), sect. 34, Pamph. L. 392, 1 Br. Purd. 324, pl. 49, enacts, "If any person shall have two wives or two husbands at one and the same time, he or she shall be guilty of a misdemeanor," &c.

The defendant pleaded "Not Guilty," and the Statute of Limitations.

[Gise v. Commonwealth.]

The Act of March 31st 1860 (Criminal Procedure), sect. 77, Pamph. L. 445, 1 Br. Purd. 394, pl. 79, provides that, "All indictments which shall hereafter be brought or exhibited for any crime or misdemeanor—murder and voluntary manslaughter excepted—shall be brought or exhibited within the time and limitation hereafter expressed and not after; that is to say, all indictments and prosecutions * * * for all misdemeanors, perjury excepted, shall be brought and exhibited within two years after such * * * misdemeanor shall have been committed."

The indictment was tried November 29th 1875, before Harding, P. J.

The evidence of the Commonwealth was that Gise married Harriet Fisher on the 10th of June 1852, and lived with her several years; he afterwards left her, and on the 24th of May 1868, married Jemima Davis, Harriet being in full life.

The defendant offered no evidence.

The court charged:—

"* * * Bigamy as defined by text writers, is 'the state of a man who has two wives, or a woman who has two husbands living at the same time.' The Pennsylvania statute has in view just that 'state' of a man or woman, as the case may be, and provides concerning it thus: 'If any person shall have two wives or two husbands at one and the same time, he or she shall be guilty of a misdemeanor.' Under this statute the offence of bigamy, like that of carrying concealed weapons, for instance, is *continuous*; and the limitation does not begin to run as long as the criminal act—'having two wives or two husbands at one and the same time'—continues.

"The English statute is different: 'Whosoever, being married, shall marry any other person during the life of the former husband or wife * * * * shall be guilty of a felony.' Under this statute the limitation begins to run from the moment the criminal act is consummated; that is, when one being 'married,' *marries* 'any other person during the life of the former husband or wife.'

"If you believe the Commonwealth's testimony, the defendant may be convicted; his plea of the Statute of Limitations cannot avail him. * * *"

The defendant was convicted and sentenced.

Having excepted to the charge of the court on the effect of the Statute of Limitations, the defendant took a writ of error and assigned the charge for error.

*E. L. Merriman*, for plaintiff in error, cited Commonwealth *v.* Hutchinson, 2 Pars. 453.

*H. W. Palmer*, for Commonwealth, defendant in error.

[Gise *v.* Commonwealth.]

Mr. Justice Paxson delivered the opinion of the court, May 18th 1876.

This case presents a single question.

The plaintiff in error was indicted for the crime of bigamy. Upon the trial in the court below, the Statute of Limitations was set up as a defence. It appeared that the second marriage took place more than two years prior to the prosecution. The court ruled that bigamy was a continuing offence, and that the statute did not apply. The defendant was convicted and sentenced; and the record having been brought into this court upon a writ of error, we are required to decide upon the correctness of this ruling.

Our Statute of Limitations contains no clause excepting bigamy out of its operation. Its language is: "All indictments which shall be brought or exhibited," &c. Were we now to say that all indictments except bigamy shall be barred, unless brought or exhibited within the statutory period, we should be writing into the Act of Assembly .that which. the law-making power has not placed there. This is clearly not within the province of the judiciary. It is said, however, that the Statute of Limitations does not apply by reason of the peculiar phraseology of the section of the code defining bigamy; that the offence is the having two wives or two husbands at one and the same time, and is of a continuing nature. This is certainly a literal construction of the act, and taken in this strict sense it defines no offence, for the reason that, under the law of Pennsylvania, it is impossible, as a legal proposition, for a man to have two wives, or a woman to have two husbands at the same time. A man who takes a wife here, cannot have a second wife so long as his former marriage is undetermined by divorce or death. He may, indeed, enter into a second marriage contract pending the first. But the second woman is never a wife. The law strikes down such second contract as void, and the offence is bigamy on the part of the man.

It is very clear that at common law the crime of bigamy occurs and is complete when the second marriage is accomplished. It follows that the statute would commence to run from that time. This has never been questioned. But it is said that, owing to the peculiar language of our statute, it seeks to extend the offence of bigamy beyond the mere marriage contract, and cover the subsequent cohabitation of the parties, which, being continuous in its nature, is not affected by the bar of the statute. Yet, a little reflection will show that our code, so far from being peculiar in its terms, merely defines the offence of bigamy at common law. It is said, in Bacon's Abridgment, that bigamy is the "having of a plurality of wives," and that the offence consists of marrying a second wife, the first being alive. Bouvier defines it to be "the state of a man who has two wives, or of a woman who has two husbands, living at the same time." Blackstone says it is the

[Gise v. Commonwealth.]

"having of a plurality of wives at once." It will be seen that our code, 34th section of Act of the 31st of March 1860, Pamph. L. 392, uses almost the precise phraseology of the text writers. Its language is: " If any person shall have two wives or two husbands at one and the same time." Nor can it be claimed that there is anything novel in this section. It is but a re-enactment. of the Act of 1705 (1 Sm. Laws 29), so far as it relates to the description of the offence. In a note to the last-named act, it is said that this statute merely defines the offence of bigamy, which " is understood in law to be, where a person marries a second wife or husband, the first being living.". Such has been the uniform construction of our statute since the Act of 1705; our indictments have been so drawn. The forms which are given by Mr. Wharton, in his Precedents, at page 582, charge the second marriage as the offence, as at common law. One of those forms was prepared by Mr. Jared Ingersoll, while attorney-general, in 1795; the other by Attorney-General Bradford, in 1790. Both of these eminent lawyers evidently regarded the second marriage as the offence; and such has been the uniform construction from that day to the present time. That they were right in this, is manifest from the fact that the indictment for bigamy is always, under our practice, found within the jurisdiction where the second marriage took place. That the venue must be so laid is elementary law: Wharton's A. C. L., § 2627; Finney v. State, 3 Head. 544; People v. Mosher, 2 Parker 195. It is not so in England, nor in New York, nor Virginia. But this rests upon statute. We have no such statute, and the common-law rule prevails.

What our statute forbids is the contracting of a second marriage during the lifetime of a former husband or wife. As was said in the State v. Patterson, 2 Ired. 346: "Marriage, or the relation of husband and wife, is in law complete when parties, able and willing to contract, actually have contracted to be man and wife, in the form and with the solemnities required by law. It is marriage; it is their contract which gives to each right or power over the body of the other, and renders a constant cohabitation lawful; and it is the abuse of this solemn and formal contract, by entering into it a second time when a former husband or wife is still living, which the law forbids, because of its outrage upon public decency, its violation of the public economy, as well as its tendency to cheat one into a surrender of the person under the appearance of right. A man takes a wife lawfully when the contract is lawfully made. He takes a wife unlawfully when the contract is unlawfully made; and this *unlawful contract* the law punishes." In Reg. v. Baron, 1 Cox Crim. Cas. 34, it was said by Lord Denman, C. J.: " The offence consisted in going through the ceremony of marriage, and appearing to contract that which was a legal and binding union at the time when she (the defendant)

had already a husband living. That single fact constitutes the crime and the proof of it." It is needless to multiply authorities.

The doctrine, now for the first time asserted, that the continuing cohabitation is the offence, does not need an extended discussion. It is not necessary to allege or prove cohabitation upon an indictment for bigamy : Cayford's Case, 7 Greenleaf 58 ; Graham *v.* The People, 9 Parker ; State *v.* Patterson, *supra.* On the contrary, a man may be convicted of bigamy who separates from his second wife at the altar, and has never cohabited with her at all. The *gravamen* of the offence is the second marriage contract, by means of which the offending party fraudulently obtains dominion or control over the body of the other. Mere lewdness or unlawful cohabitation is provided for by other sections of the code. The doctrine of continuing offences is novel. No text writer in England or America has ever asserted it. No respectable authority has ever recognised it. It is wholly unknown to the criminal law. There is a period in the history of every crime when it is completed and the offender becomes liable to the penalties of the law. From that moment the statute commences to run.

It is said that, if the statute runs from the second marriage, a man can defy the law by keeping his second marriage secret until after the statutory period has passed. This hardly rises to the dignity of an argument. Carried to its legitimate conclusion, it would apply to every case of crime, and entirely annul the statute. It is true a man may live openly with his second wife after the bar of the statute. So he may with any other woman. I do not see that the scandal, or the injury to public morals, is greater in the one case than in the other. In either case he may be punished according to the nature of his offence. When a married man unlawfully cohabits with a woman, he commits the crime of adultery. When he contracts a second marriage, he is guilty of bigamy. The difficulty in this case arises from the attempt to punish a man for one offence under a statute defining and punishing a different offence.

The statutes of several of the states differ from our own. So does the English statute. But the difference is more in form than substance. They are generally intended to define and punish the offence of bigamy. We have already seen in what that offence consists.

I have used the word bigamy according to its popular signification. Strictly speaking, it means twice married, as its derivation clearly shows. This was never an offence at common law, although made so by the canonists. Polygamy is the proper term to describe the offence we have been discussing; but by long usage bigamy has come to be understood in law to be the state of a man who has two wives, or a woman who has two husbands, at the same time.

The Statute of Limitations is a bar to this prosecution. It fol-

[Gise v. Commonwealth.]

lows, therefore, that the plaintiff in error was illegally convicted and sentenced, and should be restored to his liberty.

The judgment is reversed, and the record remitted to the Court of Quarter Sessions, with directions to carry this order into effect.