## Commonwealth v. Grube

*K. L. Shirk*, for Commonwealth; *S. V. Hosterman*, for defendant.

SCHAEFFER, J., March 6, 1933.—On July 7, 1923, the defendant was ordered by the court to pay to his former wife the sum of $4 per week for the support of his minor son. Defendant and his wife were then divorced. Defendant complied

with the order of court until 1932, when he became in arrears and an attachment was issued against him. It appears that defendant had defaulted in his payments on account of unemployment. After numerous continuances, he was finally sentenced for contempt of court for a period of 6 months. On September 9, 1932, he was discharged from prison after serving his full term. Shortly thereafter, on December 10, 1932, his former wife proceeded against him on a second attachment on the same order of court. The defendant asks that it be dismissed on the ground that his former commitment was a punitive and not a remedial sentence and that he cannot be put in jeopardy twice for the same offense, unless there was subsequent cohabitation. It is practically admitted that defendant's financial situation is the same now as it was when he was committed to prison on the first attachment.

It appears there are no decisions in Pennsylvania directly ruling the question involved in this case.

In Commonwealth v. Rudy, 29 Pa. C. C. 450, Judge Hassler held that the defendant in a desertion case cannot be jeopardized twice for the same offense, and in the opinion he cited Gise v. Commonwealth, 81 Pa. 428, 432, in which Justice Paxson said: "The doctrine of continuing offenses is novel. No text writer in England or America has ever asserted it. No respectable authority has ever recognized it. It is wholly unknown to the criminal law. There is a period in the history of every crime when it is completed and the offender becomes liable to the penalties of the law." Accord, Commonwealth v. Markley, 5 Dist. R. 134; Commonwealth v. Dityoung, 10 Schuyl. 261; Commonwealth v. Young, 25 Pa. C. C. 655.

The Act of June 15, 1911, P. L. 973, sec. 1, provides that in all cases where an order has been made by the court of quarter sessions for the support of a wife, child, etc., upon affidavit or petition filed, setting forth that the order has not been complied with for a period of 30 days, said court shall issue an attachment, and if it shall appear to the court, after hearing, that the person has wilfully neglected to comply therewith, the court may adjudge said person in contempt of court. In section 2 of the same act, it is provided that the court in the exercise of its discretion may commit said person for a period not exceeding 6 months. The act provides a new method of enforcing orders of maintenance and support by attachment and by imprisonment for contempt, and such method is exclusive of the old remedy by fine: Commonwealth ex rel. v. Horwitz, 78 Pa. Superior Ct. 383. In Commonwealth ex rel. v. Berardino, 99 Pa. Superior Ct. 537, an attachment for contempt was allowed even though a bond was given for the performance of the order of court, as this remedy was not exclusive.

In cases of fornication and bastardy, it has been held that where a defendant after conviction and sentence is discharged under the insolvency laws, he is not subject thereafter to attachment and imprisonment for failure to pay according to the order, but that only the civil liability remains: Commonwealth v. Dee, 14 Pa. Superior Ct. 640; In re Insolvency of Hogan, 83 Pa. Superior Ct. 221. However, in Davis's Appeal, 90 Pa. 131 (1879), it was held that a mere surrender of defendant's property, contemplated by the insolvent laws, does not entitle a person in confinement for deserting his wife and children to his discharge, but that he should be required to satisfy the conscience of the court, after an actual confinement of 3 months, of his inability to comply with the order of court and give security.

In Commonwealth v. James, 142 Pa. 32 (1891), in a desertion case under the Act of April 13, 1867, P. L. 78, the lower court in its opinion, which was affirmed by a per curiam opinion of the Supreme Court, said:

"Imprisonment is not a satisfaction of the order of the court; neither does it release him from the obligation to comply with it. The person imprisoned is not entitled to demand his discharge after the expiration of three months, but the court is authorized to discharge him, if satisfied of his inability to comply with the order or give security; and the practice always has been to discharge defendants, in such cases, on entering their own bonds to comply with the order of court. . . . He is now held for his refusal to comply with an order of the court, made in his own case and for his own benefit."

Furthermore, the Act of May 24, 1917, P. L. 268, sec. 1, provides that whenever in any proceedings brought against any man, wherein it is charged that he has, without reasonable cause, separated himself from his wife or children, or from both, or has neglected to maintain his wife or children, the court shall commit the defendant for want of a bond with security, etc. Said act further provides that if the defendant in any such proceeding shall violate the terms of the order of court, the court may issue an attachment. In case of the forfeiture of the bail bond, any sum collected thereon shall not bar or in any way affect the power of the court to enforce its orders against the defendant by attachment or otherwise. This act enlarges the jurisdiction of the court and provides for additional penalties in cases of desertion and nonsupport.

Another act, passed June 15, 1917, P. L. 614, relating to desertion of wives and children, permits the court to order the defendant to pay a certain sum for the comfortable support and maintenance of the wife or children, or both, and to commit such person to the county prison, there to remain until he shall comply with such order, or give security, by one or more sureties; and further to enforce the compliance with the order, the court may issue the appropriate writ of execution against any property, real or personal, belonging to the defendant, or against any money or property to which he may in any way be entitled, whether under a spendthrift trust or otherwise, free from any exemption claim.

The Act of July 12, 1919, P. L. 939, makes it a misdemeanor for a husband or father to desert or fail to support his wife or children, in addition to the remedies now provided by law:

"Provided, That no such conviction, payment, or fine, or undergoing imprisonment shall in any manner affect the obligation of any order for support theretofore made against the defendant in the court of quarter sessions or the municipal court in the manner now provided by law: And provided further, That upon conviction the court may suspend sentence upon and during compliance by the defendant with any order for support theretofore made against him, as already made or as may thereafter be modified in the manner now provided by law, and, if no such order shall have been made, then the court trying the defendant may make such order for the support by the defendant of his wife and children or either of them, which order shall be subject to modification by the court on cause shown, and may suspend sentence upon and during the compliance by defendant with such order, then made or as thereafter modified, and entry of bond by defendant, with surety approved by the court, conditioned on compliance with such order."

It may be contended that the original order of support remains unchanged by proceedings under said Act of 1911, and that the commitment on an attachment for failure to comply therewith does not necessarily nullify the order of support. If the offense of desertion and nonsupport is of a continuous nature, then the order of court for support would continue in force even during the time the defendant is in prison under an attachment and unable to earn money, and he might thus be rearrested for failure to comply therewith if his imprisonment exceeded 30 days. If such an interpretation of the law should prevail, a defend-

260

ant might be kept in prison for an unlimited period. In the event that defendant should, after his commitment on an attachment, have any property, real or personal, or money or estate to which he is entitled, the same is subject to an execution writ in addition to any sum collected in case of forfeiture of the bail bond. Furthermore, the procedure under the Act of 1919, supra, making the offense in question a misdemeanor, is also available. While some hardship may thus ensue, especially in the case of children and dutiful and faithful wives, nevertheless the reverse may also furnish to a certain class of women a legal weapon which may prove to be unfair and unreasonable.

The conclusion is, therefore, reached that a commitment on an attachment for nonsupport and the serving of a sentence for contempt shall operate to release defendant from any further attachment on the same order, except in cases where the parties again cohabit or resume the marital relationship. However, the other remedies remain unaffected as above referred to.

The foregoing is a statement of the law generally applicable to this question as the court understands it.

Under the particular facts of this case, the rule to show cause why an attachment should not issue is now discharged.

From George Ross Eshleman, Lancaster, Pa.