## Commonwealth v. Clauges

*William J. MacCarter, Jr.*, district attorney, *Louis A. Bloom*, assistant district attorney, *Charles D. Fagles* and *Robert W. Beatty*, for Commonwealth.

MACDADE, J., August 15, 1933.—On July 21, 1933, this court sentenced the above-named defendant to pay a fine of $100 and costs of prosecution and to undergo imprisonment in the county jail for a period of 1 year minimum and 2 years maximum because he pleaded guilty to a charge of bigamy.

However, the fact of a bigamous marriage being proven, has a court of quarter sessions the authority, in passing the sentence, to declare the said bigamous marriage null and void?

We believe it does, as we have decreed in similar cases heretofore, said authority being derived from legislative sanction, namely, the Act of March 31, 1860, P. L. 382, sec. 34, as amended by the Act of March 27, 1903, P. L. 102, sec. 2.

The Act of 1860, as amended by the Act of 1903, 18 PS § 611, provides:

"From and after the passage of this act, if any person shall have two wives or two husbands, at one and the same time; or, if any person who has entered into a contract of marriage with another person, whether the marriage be valid in law or not, shall, while the other contracting party be alive, and before said former marriage has been legally declared void or annulled by the decree of a proper court of record, go through any form of marriage recognized as binding under the laws of this commonwealth with any other person, whether the parties thereto cohabit thereafter as man and wife or not; he or she shall be guilty of a misdemeanor; and on conviction be sentenced to pay a fine not exceeding one thousand dollars, or to undergo an imprisonment, by separate and solitary confinement at labor, not exceeding two years, or both, at the discretion of the court, and in all such cases, where the first marriage shall be valid in law, the second and all subsequent marriages shall be bigamous and void: Provided, That if any husband or wife upon any false rumor, in appearance well-founded, of the death of the other (when such other person has been absent for two whole years), hath married or shall marry again, he or she shall not be liable to the penalties of fine and imprisonment imposed by this act."

We are not unmindful of The Divorce Law of May 2, 1929, P. L. 1237, which provides, in section 12, as follows:

"Annulment of Bigamous Marriages.—In all cases where a supposed or alleged marriage shall have been contrated, which is absolutely void by reason of one of the parties thereto having a spouse living at the time the supposed or alleged marriage, may, upon the application of either party, be declared null and void, in accord with the principles and forms hereinafter prescribed for cases of divorce from the bond of matrimony."

The above section derived from the Act of 1903, which repealed and supplanted section 34 of the Act of March 31, 1860, P. L. 382, which was a consolidation and amendment of the province law of 1705, 1 Sm. L. 29, and of section 4 of the Act of April 5, 1790, 2 Sm. L. 531; the Act of 1860 being the law under which the crime has been heretofore punished, since the reform of the Penal Code: Report on the Penal Code, 18.

Bigamy occurs and is complete at the time the second marriage takes place: Gise v. Commonwealth, 81 Pa. 428.

"The state has a vital interest in the purity of the marriage relation, and it seems to have been the legislative intention to require that those who have once married shall not while both are living enter into another alliance until the first marriage has been legally dissolved or its invalidity established by a judicial proceeding": Commonwealth v. White, 22 Pa. Superior Ct. 67, 69.

If this defendant when the marriage contract was entered into had a living and undivorced wife, and the admission of guilt proves the fact, he was utterly powerless to make a valid contract of marriage and his attempt to do so was entirely nugatory. The contract violates the above prohibitive criminal statute, and this defendant did not thereby acquire the rights incidental to a lawful marital relation. Such a marriage does not, as between the parties, impose

upon the innocent party to it the obligations and duties of a husband and wife: Kenley v. Kenley, 2 Yeates 207; Heffner v. Heffner, 23 Pa. 104.

It is an unlawful relation and should be immediately discontinued when the innocent party to such a bigamous marriage discovers the truth. However, it is doubtful if the innocent party has a right to wed again without first procuring a decree of divorce or annulment of the marriage: Harrison v. Harrison, 1 Phila. 389; Howard v. Lewis, 6 Phila. 50; Thompson v. Thompson, 10 Phila. 131.

A bigamous marriage must be annulled of record before the parties are free to separate and remarry: Hullman v. Kauffman, 4 D. & C. 507.

Remarriage without a decree of annulment is a misdemeanor: Act of March 27, 1903, P. L. 102, sec. 2.

It has been held that the proceeding to declare a bigamous marriage to be void cannot be brought under the Declaratory Judgments Act of June 18, 1923, P. L. 840, as The Divorce Law governs the procedure in such cases: McCalmont v. McCalmont, 93 Pa. Superior Ct. 203; Shallenberger v. Shallenberger, 8 D. & C. 235; Hornbake v. Hornbake, 72 Pa. Superior Ct. 605.

"It should be remembered also that both by the civil and canon law, a bigamous marriage is simply a nullity. Unlike mere canonical impediments, the existence of a prior marriage created such a disability as to make the second marriage absolutely void": Sturgeon, Divorce, 86.

This is the true intent of the Act of March 13, 1815, 6 Sm. L. 286, the first clause of which is "he or she hath knowingly entered into a second marriage, in violation of the previous vow, he or she made to the former wife or husband, whose marriage is still subsisting," whereby it becomes, if proven, a cause for divorce upon the application of the injured party. And bigamy has been described as knowingly entering into a second marriage in violation of a previous vow made by a person to a former husband or wife, whose marriage is still subsisting: Ralston v. Ralston, 2 Dist. R. 241.

As early as 1705 a statute was passed [1 Sm. L. 29], which, after providing for the punishment of the crime of bigamy, and declaring the second marriage void, enacted that: "the first wife or husband of the person offending against this act shall have a bill of divorce from board and bed, granted by the Governor for the time being, against the husband or wife so offending, if desired within one year after conviction."

Bigamy was considered a great crime against the marriage obligation; gross infidelity is perpetrated and no baser indignity can be put upon the faithful wife or husband than the crime of bigamy. Sound morality and technical construction alike shall favor the above view, as is hereinafter expressed in the form of order made part of this opinion.

So, from the year 1859 to the present, including the last expression in the recent divorce code adopted by the legislature, such has been the determination of our courts and legislative bodies; for instance, in 1859 the legislature expressly enacted a statute [Act of April 14, 1859, P. L. 647] providing for a divorce from a bigamous marriage, as follows:

"In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void, by reason of one of the parties thereto having a husband or wife living at the time, the courts of common pleas shall have power to decree the said supposed or alleged marriage to be null and void, upon the application of an innocent or injured party, and the jurisdiction shall be exercised and proceedings conducted according to the principles and forms which are or shall be prescribed by law for cases of divorce from the bond of matrimony."

"That is, the legislature, correctly, did not regard such marriage as creating 'the bond of matrimony,' which is the bond from which the Act of 1815 assigned cause of divorce, but allied the proceedings for judicially declaring a bigamous marriage void with the forms for divorce under the earlier statute. The Act of 1859, moreover, was an utterly useless enactment and a mere duplication of legislation, if the Act of 1815 already provided for divorce from a bigamous second marriage and did not apply to the dissolution of the first marriage because of the contracting of the second. This manifestly was not the view of the assembly, and as an evidence of legislative construction, therefore, the Act of 1859 is in support of our interpretation of the earlier statute": Ralston v Ralston, 2 Dist. R. 241, 243; Griffith v. Smith, 3 P. L. J. 151, 1 Clark 479; Act of April 14, 1859, P. L. 647; but see Harrison v. Harrison, 1 Phila. 389.

And again in the case of Heinzman v. Heinzman, 4 Dist. R. 225, the court held that the Act of 1815 is not applicable in any way to the case in hand. The Act of 1815 contemplates the granting of a divorce, not to the parties who have entered into the second marriage, but to the innocent party of the first marriage, injured by the act of the marriage partner wrongfully entering into the second marriage. The Act of 1859 pronounces the second marriage absolutely void and provides the innocent party in the second marriage with the means whereby a judicial decree of nullity may be legally obtained. The first act provided for a decree of divorce, the second for a decree of nullity. The two acts are not inconsistent but are intended to provide remedies for distinctly different cases: Heinzman v. Heinzman, supra.

To settle whatever doubts may have existed as to the interpretation of the Act of 1815, it seems the Act of 1859 was passed, declaring the second marriage absolutely void and that the court may decree it to be null and void, giving the courts of Pennsylvania the power possessed by the courts in England of entering a decree of nullity: 1 Brewster's Practice, 407, par. 776; Act of April 14, 1859, P. L. 647.

It is only after a sentence nullifying a second marriage that the parties are at liberty to marry again: Thompson v. Thompson, 10 Phila. 131.

However, it has also been held that a conviction of bigamy at the suit of the injured party to the second marriage would seem to be a sufficient dissolution of the second marriage, without securing a decree of nullity: Harrison v. Harrison, 1 Phila. 389; Commonwealth v. Walinski, 18 Dist. R. 504. (Harrison v. Harrison was decided prior to the Act of 1859.)

A bigamous marriage is not the less void because no proceedings have been had under the Act of 1859, supra, to declare it null and void; and if at the time the alleged prior marriage of the respondent took place, the supposed husband had a wife living, that marriage is void, and the libellant is not entitled to a divorce: Klaas v. Klaas, 14 Pa. Superior Ct. 550.

In that case, commenting upon the Act of 1859, the court said:

"The act of 1859 provides a method by which a judicial record may be obtained, formally declaring void, marriages which by the law are void and recited by the act itself to be void. It is a means furnished by the legislature for rendering facts and their effect judicially certain. It is in the nature of a proceeding in divorce. It is in aid of the party injured, and its beneficial provisions should be invoked and carried out by the persons so unfortunately situated as to be in need of its aid. We can not concede, however, that a marriage void by reason of bigamy on the part of one of the parties is any the less void because proceedings were not brought under the act of 1859 to declare the marriage void. The marriage of the respondent with William Lake was absolutely void. She was thus free to marry the present libellant, who is not

entitled to a decree of nullification of his marriage under the provisions of the act of April 14, 1859, inasmuch as the respondent had no lawful husband living at the time of her intermarriage with the libellant. There are happily but few cases in the reports of this commonwealth, in which the principle involved has been discussed. There are authorities, however, which we believe justify the conclusion reached: Kenley v. Kenley, 2 Yeates, 207; Heffner v. Heffner, 23 Pa. 104; Thomas v. Thomas, 124 Pa. 646."

In the opinion of the court below in that case, it is said:

"It is provided by the act of 1705, 1 Sm. L. 29, that, upon conviction of bigamy, the second marriage shall be void. This provision is not contained in the Act of March 31, 1860, P. L. 382, sec. 34, and P. L. 427, sec. 79, no doubt being omitted as unnecessary, but it would not seem that that part of the act of 1705 is repealed, and we are therefore of opinion that, if an adjudication of nullity is necessary to the validity of an after-contracted marriage, the conviction of bigamy is sufficient".

We find nothing in the Act of April 14, 1859, P. L. 647, and subsequent amendatory and supplementary acts, to change our opinion that a conviction of bigamy is sufficient to avoid the bigamous marriage. The only object of the Act of 1859, supra, and subsequent legislation is to authorize the courts to decree to be void a supposed marriage which is already "absolutely void." The decree so made has no effect upon the status of the parties; it simply affects the evidence of it and turns that which was before but matter of averment and proof into res judicata. It is in this respect similar to the provisions for decreeing the existence of the facts which make a married woman a feme sole trader, and was enacted for a similar reason.

Therefore, in view of these clear and convincing expositions of the laws and decisions, why should not the court of quarter sessions, in sentencing a defendant convicted of bigamy, declare the second or subsequent marriage to be bigamous and void?

Commonwealth v. Walinski, 18 Dist. R. 504.

We believe it should for the reasons hereinbefore advanced, for by a formal decree of annulment in the criminal court where the defendant has been found guilty and sentenced the proceedings are made res judicata, and the bigamous marriage is established as a fact and declared null and void. It is the innocent party's right to have such a decree of annulment made as part of the sentence. What the effect would be if the innocent party remarried without fortifying herself with a decree in the common pleas court, in accordance with the form and proceedings prescribed by The Divorce Law, we are not disposed at this time to decide, nor are we called upon to do so. The safe course is a decree of divorce rather than nullification as part of a sentence.

In the above case, Judge Barratt recites acts of assembly and the opinion of the appellate and county courts in similar matters and states (p. 506) : "From this review the conclusion is reached that the court, in sentencing the defendant convicted of bigamy, may declare the second or subsequent marriage to be bigamous and void."

To the same effect is the opinion in Commonwealth v. Kaiser (No. 2), 24 Dist. R. 74, which holds that the conviction of a defendant of bigamy establishes the fact of a bigamous marriage, and the court of quarter sessions, in imposing sentence on defendant, may, as an incident to the sentence, declare the bigamous marriage null and void.

It is not the decree that renders the marriage a nullity. The act of assembly itself declares that the marriage shall be void. The only function of the decree is to render the fact of nullity judicially certain.

In the case just mentioned, Judge Van Swearingen elaborates on the similarity between the remedy in a divorce action and the sentence in the criminal case, such as the one we have at bar. The court held, p. 76:

"The verdict of the jury in the present case establishes the fact of the bigamous marriage, and the Court of Quarter Sessions, in imposing sentence on the defendant, has authority to declare the bigamous marriage null and void: Com. v. Walinski, 18 Dist. R. 504. The fact of a bigamous marriage may be established either in a proceeding in the Common Pleas under the provision of the Act of April 14, 1859, P. L. 647, or upon an indictment in the Quarter Sessions, and in either case the court having jurisdiction may adjudge the bigamous marriage void. The Act of March 27, 1903, P. L. 102, especially declares that a bigamous marriage shall be void, and there is no valid reason why the Court of Quarter Sessions may not enter an adjudication thereof as an incident to the sentence imposed on a defendant convicted of bigamy under the act. It is not the decree that renders the marriage a nullity. The only function of the decree is to render the fact of nullity judicially certain: Newlin's Estate, 231 Pa. 312."

The following decree (which we follow here) was entered in the case:

"And now, May 29, 1914, the sentence of the court is that the defendant pay the costs of prosecution, a fine of 6 cents to the Commonwealth, and that he undergo an imprisonment in the county jail for and during a period of one year, and the bigamous marriage of the defendant to Mary L. Loudermilk, on Feb. 10, 1913, is adjudged and declared to be null and void."

In these views of Judge Van Swearingen we concur; hence the following

### Order

And now, July 21, 1933, the sentence of the court is that the defendant, Joseph Clauges, pay the costs of prosecution and fine of $100 to the Commonwealth of Pennsylvania; that he undergo imprisonment in the Delaware County prison for a period of 1 year minimum and 2 years maximum from date of commitment, June 28, 1933; and that the bigamous marriage of the defendant to Doris Kugel on April 27, 1931, is adjudged and decreed to be null and void.

From William R. Toal, Media, Pa.